Your Honor, in this case under Doctrine 2-17-0490, people of the state of Illinois, names of the defendants, do Melody Gliniewicz, Chief Medical Officer, plead. The criminal on the death of the plaintiff's client, Mr. Richard S. London. The criminal on the death of the defendant's attorney, Mr. Donald J. Lawson. All right. Mr. London, whenever you are ready. Good afternoon, Your Honors. Counsel, you may please report. Richard London on behalf of the people of the state of Illinois. Your Honors, as I was preparing for this argument, due to the complications and the convolutions, I actually did something I don't typically do and tried to figure out a way to just really boil it down to some of its simplest components. And I came up with the concept that really there is no dispute as to the content of the communications between the defendant and her deceased husband. The only dispute here today before you, Your Honors, is whether or not the trial judge properly determined that the marital privilege is a sufficient basis to not allow the presentation of those communications. The people's position is that there are three separate reasons why the judge erred. One, the defendant ultimately waived marital privilege. And two, that there are two exceptions that we are urging this court to find. We understand the third-party exception is one of those arguments, correct? Correct. And the other argument is that the statute covers only spousal testimony and not the communications themselves? No. Actually, what I'm urging today would be the joint criminal conspiracy theory. Okay. That's what this court analyzes. Well, that would be a third then. I'm sorry? That would be a third as well. Yes. Yeah. So there's actually four issues. There's actually four, yeah. Okay. I wasn't planning on referencing. Just let's cut to the chase. Sure. The Illinois Supreme Court in Simpson, in Trezak, and also in Palumbo, going back to 1955, has always read the statute as encompassing marital communications, correct? Correct. And you're asking us to acknowledge an exception that the Supreme Court has not? Correct. We don't believe the court has. Do we have the authority to disregard the Supreme Court proceeding? Do you have the authority to disregard? No. Do you have the authority to interpret? Yes. And we're urging that on the third-party exception in Simpson, the court actually specifically stated that there is, one may testify, who has intercepted a communication regardless of whether or not a privilege exists. They cited with, again, they didn't explicitly go over the exception. They cited McCormick. They cited McCormick. And McCormick talks about misdelivery, et cetera. Where's the misdelivery or the interception here? The interception was a search warrant. The interception was a search warrant. It was not due to the carelessness of either the defendant here or her spouse, was it? No, and the statute doesn't say it has to be, and the cases that McCormick discusses doesn't say it has to be. So any time the government wants to breach this privilege, all they have to do is get a court order, get a search warrant? No, of course not. If the government breaches, I wouldn't say it's breached, but if the government is attempting to circumvent the privilege in a criminal manner and they obtain it as the defense comes up with the concept of a wiretap, if they do a wiretap and discover something, could they then breach the privilege because they've taken overt action in a criminal manner? And the answer, of course, would be no. You can't do that. The difference here was it was discovered, I don't know whether I want to say inadvertently, but it was intercepted as part of a completely unrelated investigation into the murder of a police officer. This was a massive investigation where they believed, due to his own actions, that Lieutenant Glitowitz was in pursuit of and was killed by three suspects. Where's that in the record? I believe this court can take notice, and it is in motions that I have included. It is not in the record itself. I believe this court can take notice of this matter. This isn't a small matter. This was a massive manhunt. It involved hundreds of state, federal, local task force members. And I don't think there's a dispute, but to the extent that it isn't in the record, this is exactly why the people believe that it needs to be remanded with instructions to reopen and have the judge look at the communications, which he, as well as all the parties, know what was stated. What's our standard of review here in looking at the issues of privilege and waiver? I believe that as far as the standard of review would be de novo, because we're asking this court to interpret a legal, we're not basically asking to make a fact finding. Are there any factual disputes here? No. No, I don't believe so. I guess the only factual dispute would be what was contained on the defendant's phone at the time she consented. At oral argument on the motion to reconsider, defense counsel suggested that the consent may not have been voluntary. Wouldn't that be a factual issue? Yes, I'm sorry. I do apologize. I don't. There is an issue of fact, correct? To the extent, yes. Not with respect to the joint criminal enterprise. Correct. Your position is there's no factual dispute. Correct. Even though the court, this court, nor the trial court has actually looked at those communications, because they were not presented in an offer of proof. They were presented in at least in a motion to reconsider from the direct denial, and that was a motion of defendant, at least a portion that was redacted. So the court had it in front of it prior to the redaction, and this is exactly kind of why we're saying. Why did the state agree to redact it then? It's not before us. Correct. It was never before the trial court. Correct. And our review is de novo. We don't have an opportunity to look at those communications. Which is exactly why we took the extraordinary motion this court granted, the extraordinary relief of remanding back for leave to file a motion to reopen proofs. We are aware of that. Contrary to my suggestion in my reply brief when I said that we might consider filing a motion in front of this court upon further discussing with my colleagues and determining, we said, you know what? That's just not appropriate. We can't present information to this court that hasn't been allowed to allow. Well, it seems to be agreed that the communications at the very least discussed some criminal activity. No question. But you're not suggesting just the discussion of criminal activity warrants recognizing the exception of joint criminal enterprise, do you? Yes. Just because the defendant may have known that her husband was involved. Oh, no, I'm sorry. No, no, no. Because we don't have any of that. No, I agree. We have an allegation. To the extent that I misunderstood the question. No. Indeed, that is what the privilege is for. If the privilege is relating back in time, if that is the whole concept of almost any privilege, it's definitely a marital privilege. Who has the burden of establishing that the privilege even attaches to the communications? The, in this case, defendant. And you agreed, the state agreed in its response to the motion that the communication wasn't, communications were utterances or expressions intended to convey a message, correct? Yes. They also agreed that the message was intended to be confidential, correct? They were private communications. I actually don't have all of the discussions and the motions that people filed, but yeah, I mean, for argument's sake, I would concede that it was intended to be private. The Illinois Supreme Court has said those are the two elements that must be established for purposes of communications, marital communications. Those are the elements to go forward with their burden that isn't the be-all and end-all of the analysis. That the burden was shifted to the state. Correct. Or there was a waiver. Indeed. And that is what we're doing. That's what's at stake. Yes. And that's what we're trying to accomplish here today. And the fact is what we're basically, I don't think I've ever been in a position in 32 years to say to the court, I can't make my full argument to this court because we don't have the evidence in front of it. Which is exactly why in, I haven't recalled in 30 plus years that our agency has ever made this type of request. You're stuck with the stipulations that were made below by the state that the parties were married, the communications occurred during the marriage, and they were intended to be private. Well, we're stuck not only with the stipulations. More importantly, we're stuck with the lower court's interpretation of what those stipulations lead to legally. And that is what we're saying. And that is why we're asking this court to remand, which I'm remanded for the motion for leave to reopen. It appears clear that Justice Borah said, I'm not even going to look at this. This is for the appellate court to decide. Well, that puts us in a catch-22 because we can't present the information unless we did something which, again, I determined would be inappropriate. What about the defendant's argument that in the trial court, the state did not argue initially the joint criminal enterprise, and that was only raised in the motion to reconsider? In the motion to reconsider after my... No, after the initial round of argument. Correct, after my appeal. Again, as always, obviously this court can always find that argument is forfeited, but this court is not bound by it. Well, does that really apply in a motion to eliminate? I would think not. I would think not because it's not a final order. A lawyer can say, Judge, I just discovered this fact or that fact. I want to bring it to the attention of the court, or this is something I just... That's commonplace in motions to eliminate, isn't it? It's commonplace. In this particular case, as this court is well aware, we act in an advisory capacity as well as an appellate capacity. If the county had called us earlier in the process and asked us, should they present and make an official proof regarding what was... We would have definitely suggested they do so. The reason, as explained below, whether or not Judge Boris accepted that reason was that the lead attorney in this case felt that it would be a discovery violation or inappropriate to raise something that he couldn't prove up at trial, even though it was a motion to eliminate. And that was until he found the consent form. All he had was a police report, which would not be sufficient. I don't think that was the best suggestion, but more importantly, he felt he was doing what was appropriate. He didn't want to abrogate the canon of ethics. He did what he thought was right. Let me ask you this. With regards to the motion to reopen FOOS, was the state even charged with knowledge of the possession of the FBI consent form? Knowledge of possession? I'm not sure. Are they charged with having possession of it so they could then turn it over to the defense in discovery? Are you familiar with People v. Tompkins? Yes. I'm trying to come up with... Obviously, the immediate answer would be yes. They are and were aware of it. They are and were aware that it existed. Are you familiar with Inmate CJ? I'm not specifically. Both, in that case, DCFS reports on child abuse. The Illinois Supreme Court said that the Department of Children and Family Services, even though it's conducting an investigation of the same abuse that's a predicate for the criminal charge, DCFS is not an arm of the state for purposes of disclosure. Tompkins says that the... In Tompkins, the state of Alabama investigators who did some questioning in the case, because they're not subject to the jurisdiction of Illinois courts, the state cannot be charged with knowledge. Did you find those cases in your research? I did not. Did you look at Supreme Court Rule 412G? That is the argument that I made without the support of those cases. And the argument that we made all along and on the motion upon remand, that is exactly what the people said. And the prosecutor, Mr. LaRue, said, Judge, we've called, we've asked, and that agent is retired now. The agent was retired. It wasn't just that. I think the prosecutor made it clear. It wasn't just that agent. He contacted just about everybody. He contacted the police chiefs of Round Lake, pretty much everybody. He contacted the head of the task force. He contacted not only that investigator from the FBI, and again, I apologize if I'm going slightly beyond. I've tried to avoid learning as much as I can just for that purpose. But I think he made it clear that it wasn't just one individual, that they have been engaging since before even the motion in Lemonade, while there were preliminary motions relating to the charges themselves, that they have been attempting from day one to obtain the copy of the consent and investigation, if any. And to be honest, sitting here today, I honestly do not know if the phone that was handed over was ever actually exploited in the terms of the, but investigated. I don't know if a transcript of that phone exists. Can I ask you this? Do the doubt factors, those factors listed in doubt, even apply to a motion in Lemonade? No. They shouldn't. Why do the parties agree? I mean, the state agreed. The doubt factors apply. I can't speak as to why the state agreed. As I said, if they had called us earlier in the process, we definitely would have advised them not to. The question is now, though, given the fact that we have a ruling from, may I continue? Yes. A ruling from the trial court judge that says there is a privilege and we're not, he is not going to consider that later consent. And basically didn't. I mean, he threw it back to this court and said, you know, let the second district. What about the trial court's comment that the issues aren't right yet because you haven't even exploited the defense phone? The defense kind of comments on that in their serve response by saying, well, wait a second. There's no proof. We don't know what's on the defendant's phone. We don't know that when she consented, what was on it. It's very possible that she had purchased a new phone or deleted texts. My response is the marital privilege does not relate to what she may have done with the phone after. It relates to what the communication was at the time of the marriage. There cannot be, and that's what I open with, there cannot be a dispute. What was on her phone at the time of communications were made. Can we take judicial notice of that fact that text messages and emails on his phone would be the same as what would happen? I believe not only can you take judicial notice, but you can use common sense. And that's what the state will argue for purposes of laying a foundation for the admission. Exactly. I mean, obviously the defense will have the full gamut of responses as to a the phone messages might not have been at the time of consent. But I think it almost begs the question when they say, well, she could have deleted it. And that's the issue, isn't it? What's on her phone at the time of the consent, not at the time that they're actually made. Because when she says this, and potentially I don't know if Tim Biggers, but this statement that whatever's on, the stuff on my phone is the same as on his phone. That's at the time that she makes that statement. I believe that that is not necessarily the whole issue. I mean, that's what defense is trying to make it, that what matters was at the time that she turned the phone over. No. I think the underlying issue is if she consented to the search of her phone and made the comment that whatever's on mine was on his, it's disingenuous of the lower court judge to basically say, maybe she was referring to apps. The report that you included in your pleadings, and I think it's commented at least a portion of it in the defense brief, the defendant is talking to the police about text message about the money. I think it's clear that that was the intent. I don't think the report, at least the only thing that I've seen, does the next thing. And then she's asked for her phone. Correct. Says, I'd like to talk to my lawyer first. And then back to her home, she calls him and says, you can have the phone. Correct. I mean, to the extent that, and again, when I say it begs the question, to the extent that either there's a new phone or the text messages have been deleted, I'm sorry, this isn't the Tom Brady case where it was a different standard. This is a case, if she deleted them, there was a certain demonstration of a consciousness of guilt. That is something that certainly the parties can discuss, and it certainly would be valid of the finder effect to weigh that credibility, but we're saying we need to have that credibility weighed. With respect to, the defense argued below that the waiver has to be specific. Is that the case with respect to a waiver of marital privilege? No. It can be careless. We certainly say it can be careless, and in this case, it potentially indeed was. But we're not, the fact of the new technology, the defendant kind of wants to have it both ways. Relating to their concept of marital privilege, it doesn't matter, of course, now that her husband is deceased. It doesn't matter there's no longer marriage to protect. They want to relate back to the time. But when it comes to the consent, well, now we don't want to relate back. We want to say what happens with the phone we gave over. We're saying the waiver is to the communication itself at the time it was made. If you agree to allow your phone. Now, that wouldn't necessarily translate to a letter or to a discussion because you don't have that usually captured. But in this case, due to the nature, you can't get around the fact that text messages and or e-mails on a phone are mutually, again, a mirror image. So if she's waived her right, she waives the right, we say, to Lieutenant Kalinowicz's phone as well. That's simply on the waiver, and we do believe, again, that the interception, as we said here, if you're intercepting and you've done something in a completely different manner, it's not identical to a wiretap. It's not. Of course, it's government action. I mean, it was part of the government. But the Lake County, as we argued, without, again, the support. So I appreciate the raising of those two cases, Justice Burkett. But the fact is they don't know and aren't responsible and can't control what the FBI does. They simply can't. And because of the massive investigation, this was a nationwide story. This was a massive search. And despite every attempt that they made, my understanding, and again, I'm comfortable citing this because we include it in our motions, it wasn't discovered until there was some interplay in the defendant's case relating to obtaining Lieutenant Linowitz's pension that the consent form was turned over, discovered. And at that point in time, as soon as we got it, we turned it over. I apologized both to the court, to counsel, and I did so in my pleading process that the initial note I got seemed to convey that we'd just gotten or just became aware, and I corrected that, that, of course, there was. But the fact is, when you're talking about a motion to re-mantray open proofs, there isn't a surprise here. Yes, the people turn it over, but it's not a question that defendant knew that she consented. So we're not coming up with some strange information. In all the pleadings below until you raised that issue, the defendant said there had been no consent, there had been no waiver. Correct. Correct. And again, I mean, is that in and of itself a bit disingenuous when the defendant, the defense, certainly knew that there had been? So, I mean, don't they have an obligation as well? Yes, they're zealous advocates, and they should be. But what if they have a different theory of what that waiver was about? That's a separate matter than saying there was no consent. If they want to say there was a consent, but a consent was involuntary, that's different. That's a fair question. It's a fair question, but if you look at the record, both the lower court judge and this court would think if we didn't come up with our later, again, finding or discovering or actually getting the consent form, this court, I would have thought that there was no consent, and then we would have gone strictly on the concept of the exceptions. Let's go back to the third-party exception and the joint criminal enterprise. With respect to the joint criminal enterprise, you agree that no appellate court has accepted joint criminal enterprise in this state, correct? Definitely. There's no dispute that no court has. How long has it been? Those cases have been on the books now 20 years? I think the better question, though, is not how long the case has been on the books. As long as the General Assembly is aware of them, correct? We presume that the General Assembly is aware of our decisions, yet the General Assembly has not expanded the list of exceptions to include joint criminal enterprise. And as you say in your briefs, other states have done so. Other states have recognized it and codified it. Is that a matter of public policy for the General Assembly or our Supreme Court? As far as I'm aware, and again, I have not done an exhaustive law review research. As far as I'm aware, other states have codified that after the parties raised the issue and a court determined that despite the fact that their statutes didn't include that exception, that was warranted, and it was after a court took the step was it then potentially codified. But in each of the cases that we've cited, and to be honest, in every case that we've found, and I want to make it clear, I'm not suggesting there might not be some case out there. I'm guessing the defense would have found it if there was, where a court said, you know what, no. Yes, it's true that our statute doesn't have that exception. Yes, it's true that in People v. Crankville, the 3rd District said our statute doesn't have the exception. No court has, you know, so we're not going to make that finding. However, no court has analyzed that exception, and that's, yeah, we are asking this court to do that, and we're asking the court to do that based on the cases we've cited, based on the reformic argument, and most importantly, every court, including the Illinois Supreme Court, has said privileges are to be, privileges just as statutes are to be strictly construed. Is the record complete for us to actually make that de novo finding that the exception applies? I think the record is complete as to the legal issues of whether or not those exceptions can apply. I don't think the record is complete as to the waiver. I mean, well, let me rephrase that. The record is not complete as to the waiver. I know that, and now we're back on the first issue. I'm not talking about the second issue. The first issue is whether the joint criminal enterprise exception applies here, and you're asking us to apply that. We're not going to apply it in the abstract. I mean, we have, if there are no facts in the record to support it, why would we say whether Illinois recognizes it or not? And along with the same line, as far as that goes, it would be the same argument, and sorry, I'm kind of flipping to some extent. It would be the same argument related to the third-party exception. Without developing a few more facts, I can say all I want up here today. I'm 99.999% sure that the warrant had nothing to do with the later criminal investigation into the, you know, charges relating to the charitable funds. However, without raising that issue, without developing that issue below, no, I can't assert that everything is in front of this court, which, as I said, is why we are asking this court. We're not asking this court to reverse the finding of the judge. We're asking this court to remand with this time instead of an instruction for leave to file. We're asking that this court, especially given Judge Boris' suggestion that it's not right for him and he wants guidance in saying that word, but he said leave it to this court, remand it with instructions to reopen the proofs. The people might once again lose, but at least let's get the facts developed. Let defendant have her day in court, but to be honest, let the victims have their day in court. And our analysis, which you're correct, Justice Burke, you can't completely do in a vacuum, but the fact is that in this case, when we have the third-party exception, the concept is that the interest of justice does trump a marital privilege if indeed it is not done in, you know, furthering the marital privilege. There wasn't a question that the joint criminal conspiracy didn't promote marital harmony. It did not promote privacy. That is a separate matter. Going backwards in time is what not only marital privilege, but all privileges convey. You can tell your attorney that I've committed a crime and he has to represent you and can't report it. You can't tell your attorney I'm going to kill somebody and then expect that that's privilege. He's required. Priest, penitent, clergy, same thing, sorry, but clergy, doctor, patient, psychiatrist, anyone that's talking about future wrongdoing, that's not privilege. And we believe that was kept in this case, but, yes, we agree with the court that it needs to be remanded to further develop that and let the chips fall where it may. One last technical issue. There was an emergency motion. When I was in the trial court, I used to say an emergency was, you're dead, your client's dead, or one of you is on fire. This case is from 2009. This didn't just happen in Ohio or anywhere. Why are we calling it an emergency motion? We're calling it an emergency motion. You don't appear to be on fire. I'm not on fire. The case was not on fire. It was a quote-unquote emergency motion because realistically we don't do a moot in our case until just before. We discovered at that time this court very recently had a court meeting in where they instructed both OSAD and our agency to please keep reviewing up until date. And the emergency was simply because it's on the record. I would just like to go off, but our secretaries called and said how should they go about filing this, and they were told to do it as an emergency as a courtesy to the defendants because it was last minute. So the case is on point, but, again, an emergency was strictly for the concept that it was kind of our explanation. We knew it was at the last minute, and we wanted to make sure that the defense would receive that notice. Right. Well, whatever those issues at that meeting were, hopefully they will be taken to heart and determined a little earlier. We've already discussed the concept of starting our moots at least a week or two earlier. Thank you. Thank you. Mr. Morrison. Thank you, Mr. Court, counsel. You know, I wanted to start on the issue of this motion to reopen the proofs and this consent form. And one of the things that hasn't been discussed, it's in some of the briefs, is that the Lake County Major Crimes, forget about the FBI for a second, the Lake County Major Crimes Task Force has a report that the Assistant State's Attorney tended to us in discovery where she says that she, our client says that she verbally consented to giving her the phone, and they got the phone. Okay? Now, I don't understand why this printed consent form is such the crux of that argument, because we have verbal consents all the time, verbal consents to search cars. Go ahead. And so this excuse that they got that later as to why they needed to reopen the proofs, I've never bought that. I've heard Mr. LaRue argue it. I've heard it argued here, and I didn't. Let's ask you this. The factors in doubt, do they apply to a motion limiting? They normally wouldn't. Right. Because you would never file a motion to reconsider. Motions to reconsider are filed routinely in cases. I've had motions eliminate come up in the middle of trial and grabbed by a trial judge who nothing new or a new case or a new fact that somebody hadn't fully developed. That happens all the time.  Because all the state really wanted to do was supplement the record and get something on the record that wasn't on the record. And you cited Carbolito for the proposition that the state were charged with knowledge of this consent form, correct? Yes. Carbolito was a Brady violation case. Correct. This is not a Brady violation, is it? It's not. Did you, in your opening, you began this, the defendant, with the motion to eliminate or preclude evidence of the marital communications. You filed the motion based upon what you saw in the reports. Correct. And in your motion, you said that there had been no consent. And in that oral argument on the motion to reconsider, you said there had been no waiver, there's no consent. And in your brief, you said, in your opening brief, that there had been no consent. We've always said there's no consent. So, but you were aware of the report at page 9000. I shouldn't say there's no consent. It's a base stamp report. It says there was a, she gave consent to take the phone. I'm going to take that back. I don't, to my knowledge, ever took the position that she never gave consent. We took the position that she didn't waive her privilege. Okay. And even if she consented, she did not waive it. We differ to the states. So I wasn't, we're never trying to hide the fact that, you know, she consented. I watched the video a number of times where she says, I'm not sure I want to give you the phone. And then I read the report what she gave me the phone. Okay. Why wasn't the video in the record? The video wasn't in the record because of the time we filed the motion in limine. We filed the motion in limine because the states said during the motion to dismiss that we were, they mentioned to the judge that they were intending to bring up private text messages between her and her husband. And we hadn't gotten to the point where that tape was put into evidence at that time. And when we filed the motion in limine, we didn't feel that it was relevant. I didn't feel like whether or not she gave her phone or not was relevant. When I read, when I talk about waive of a privilege, I look at a case like, like the Simpson case where. Someone's in the room listening. Well, if someone's in the room listening, that needed a turn on that because they said, well, that was connivance from the spouse. What was relevant in Simpson is the wife says in presence and the presence of the defendant, who's a serene privilege and two police officers and an assistant state's attorney. She says, well, you told me you shot that woman. And he says, yes. But I was, I told you I was lying when I said that. But I told you I was lying. But he admits making the statement. Okay. So if because we don't even know what's on the phone, let's say that during the interview, they said, didn't you tell him that you ordered anchovies on your pizza? And she says, yes, I did tell that I ordered anchovies on the pizza. She's waived her privilege. Okay. She doesn't waive her privilege by giving, but by giving her a phone. Well, we don't know what's on that phone. Well, you acknowledged below, and maybe this is a contested issue that should be developed factually, but apparently the defendant said you're going to find the same stuff on my phone as on Joe's phone. She said something to that effect. So you acknowledge in your briefs and in oral argument below that if a person like is careless and reveals a portion of the communication or what the communications are about, then that's a waiver. Why isn't it a waiver? Because we don't know what the communication is. Well, you know what's on, you know what the state is offering because that's what you've challenged. I know what the state's offering. The state, there's thousands of, there are, one thing's correct. There were thousands of text messages discovered between this, these two, this husband and wife that love each other and communicated with each other. I have no idea what the substance of that is. The consent form, the consent form that your client signed, you don't dispute that, correct? She signed it. And it says on the consent form that the police are entitled to look for anything on this phone relevant to the investigation, correct? Correct. And at the same time, during that conversation with the police, she says you're going to find the same things on my phone that you found on Joe's phone. She, that may have been her, that was what she said. So how is that not a waiver? Waiver of what though? Of her marital communications privilege. But without knowing what's on her phone, let's say she, let's say at the time she says that, let's say, okay, I'm going to give it to her, but I deleted it. I've deleted all the text messages for my husband, the private ones, the ones where we talked about intimate details. I've deleted those. So I'll give those to you, but I really don't think you're going to find them. How do we know that she waived a privilege? They're going to pick out one text message between the two of them that they found on his phone. And how can they say that she waived that specific conversation? She gave her password, correct? Her backup password, her cell phone number, her phone physically, and signed a consent form saying anything relevant to the investigation can be retrieved. Does she have to know that her attempts to delete are meaningless because the government is going to be able to exploit that phone regardless of her intent? Does she have to know that? But how do we know? I mean, so, sorry. Let me ask you another question. What's our standard of review? I haven't thought about it until now. It's to know. Okay. With respect to both the issue of whether or not the privilege applies, and I think the State has conceded. The communications were during the marriage, and they were intended to be private. So the defendant should be covered, at least unless we recognize a joint criminal enterprise exception. Right. But our review is also de novo with respect to whether or not there's a waiver, unless there's disputed facts. Are there disputed facts with respect to what she said when she gave that phone and what she read when she signed the consent form? Is there any disputed fact? There's not as much of a disputed fact as there's an unknown fact of what's on her phone. That's why we've said, and the State's admitted, that they didn't do an analysis of the phone. If the State does an analysis of the phone and they say, look, you've got this text message that's on her phone, then I think under Simpson she waived it. But unless they're able to state with specifics what that was, we don't know whether it was on her phone when she turned it over to the State. Wouldn't that be developed at a hearing if we allowed for it, if we overruled the trial court's determination not to have an evidentiary hearing on this issue? I mean, a lot of things that you're saying is we don't know this and we don't know that. And basically maybe we don't in the context of whether the waiver applies as we're all looking at it now. Right. But the State is asking also to have the case sent back and to reverse the trial court's order denying the hearing to reopen the case. Right. So I'm not sure why that may be. Well, my question is, I mean, aren't these facts that could be developed at such a hearing? I think they were developed at the hearing. The State admitted, I think, in the order. And Judge Boris asked that, asked the State, did you do an analysis of the phone? And they said, we didn't do an analysis of the phone. No, the State raised that. The State brought that up first, not Judge Boris. The State made the comment. But what was the motion to eliminate was addressed to the information that was recovered from Joe's phone, correct? Correct. And let me ask you this. You said this. Actually, I think it was Mr. Smith who argued in the motion to reconsider. But you acknowledged at the hearing in the motion to reconsider that any conscious action by the defendant results in a waiver of the privilege, correct? I mean, I wouldn't agree with that. I have quotes about it, so I think I'm accurate. And in your opening brief, you said, quote, there is no evidence in this record of any such voluntary or intentional revelation by the defendant. But now there is in the record. There's not. Okay. Because the motion to reopen proof has been denied. So this, we're talking about this. No, I'm saying, I'm talking about in the record, not with respect to the motion to reopen proof. We now know about the consent. The trial court is aware of the consent. The trial court is aware of the conversation that the police were asking to see her phone, to look at a text message. And she gave consent to search her phone. We now know those facts. So the question, to follow up on what Justice Burke said, do we need any more facts to determine whether or not her conduct and that consent constituted a waiver? Under what the defendant concedes, a conscious action by the defendant results in a waiver of the privilege. When she says you're going to find the same stuff on my phone as you found on Joe's phone, isn't that an acknowledgment, a conscious acknowledgment of the communication? She doesn't even know what's on Joe's phone. Well, the police had just asked her about, they wanted to know about this message about the money, correct? I don't recall. It's in the report. About hiding money? I don't recall. It's in the report that was, it's part of the record. And it was in that context that she signed the waiver. And now she goes and says, you're going to find the same stuff on my phone as on Joe's phone. My reading of the case isn't the Simpson case, which is I think probably the leading case on waivers. It needs to be more specific than that. There has to be a specific conversation. And talking generally about certain things, I don't think she ever acknowledged. Your argument is that it can't be a careless waiver? There's no such thing as a careless waiver? Whether it's careless or intentional, she doesn't know what the content is. She doesn't know what it is that she's waiving. So if I, it doesn't have to be intentional. If I send, if I mean to send you a text message, if I mean to send my wife a text message, and I include you on it too, I didn't mean to, but I waived it by doing that. Let me ask you this. I'm not saying it's careless. Let me ask you this. Text messages and e-mails are offered in court all across the country, not recovered from the defendant's home, but recovered from an informant's phone, a law enforcement phone where somebody's operating undercover, and the state establishes a foundation through testimony of a police officer who's familiar, technology experts. So if the state could offer, make an offer through an expert that the information on the defendant's phone was in fact identical to what was on Joe's phone, would they be allowed to get the evidence in? Because you said she only waived what was on her phone. I guess I would have to look at that if that came up. But all I know is the state made a decision to appeal the motion to eliminate, and we're stuck with the record that we have. Okay? And that's not in the record. There's no expert testimony to say that. I know in my experience there are certain e-mails, there are certain texts that get deleted that never get retrieved again, and there are some that do. So I suppose if they provided that expert that the exact same thing was on her phone and his phone, and she gives him the phone and says you can look at it, I think that would be effective. But the problem is we're not there. So in a nutshell, your argument is that the consent the defendant gave and the waiver, whatever the waiver was, was only with respect to what was on her phone, not on Joe's phone. Correct. I believe she could have waived, even with her statement. I understand you're looking at that statement that she gave. She's in a several-hour. Well, the thing of your court, you want to challenge voluntariness. Well, we brought that up, yeah. Because you raised it, you argued it. Sure. This consent's not voluntary, Judge. She was threatened with a search warrant. And that could be developed. If we ever got there. But why should we – I mean, first of all, the doubt factor is I haven't found a case that – did you find any cases? No, no. The reason why – I mean, I've seen it with respect to emotions suppressed perhaps where the state's timing was late, the three attempts to get a doctor in, they can't get the doctor in, there's a speedy trial issue. Here, this double tables into any prejudice. Where's the prejudice? The prejudice we said was just basically time. And that's not enough. Well, but this – And you're briefing inside any cases, so that argument's forfeited, isn't it? Well, really, the state has – because you've got the doubt factor, they're the ones that call that emotionally over the proofs, okay? And there is the motion to eliminate. And, of course, you can revisit that at any time. Anyone that's tried cases knows that. But my position is you can really – if you're the state, you can't have it both ways. If you're going to say you made a mistake, Judge Boris, I even brought up this consent form. I haven't even argued it. Drug, criminal, unaccompanied sexual – You have to put that in your motion to eliminate, to at least make the court aware of the fact that there was a consent form, but you're contesting it. I don't – no, because I don't believe the consent form gave rise to a waiver. If I thought that that consent form is made, was a waiver, then, you know, that would probably be something to put in there. I don't know. I mean, I think about that as a – I do some civil work, too, certainly as a civil attorney. I make sure that the trial judge has all of the necessary facts in front of him. Of course. So you can make an informed judgment, correct? Right. And I've always taken the position that even if the court considers the consent form, it doesn't equal a waiver. Right. But that wasn't the issue. Your pleading was this shouldn't happen. But if you knew there was a consent, comma, but we don't think it constitutes a waiver, comma, wouldn't that be the appropriate thing to have said? When we drafted our motion to eliminate, we never thought that that was the – But see, consent is a matter – I can see it. The waiver would be a matter of law. It would have to be decided. You made that decision to withhold the consent because you didn't think there was a waiver. When I read 12,000 pages of discovery and I'm drafting a motion to eliminate saying that this – I'm maybe not thinking about what is happening on her farm. I think both parties – you said during the motion to reconsider that it was probably an oversight they overlooked it and their excuse doesn't fly because they probably just overlooked it. It was a big stamp discovery. It wasn't even hand-numbered, page 9,260. And I understand – I don't think you as a – you probably – if it had dawned on you, you probably would have put it in the motion just like the state should have raised it early on. And that didn't happen. That's no reason to not respect the interests of justice. The reason that there was this dichotomy between doubt and doubt and whether it applies or not just because we're in the – have they not filed a certificate of impairment? I don't think doubt – I would say clearly doubt doesn't apply. But now that they've said, if you're going to file a certificate of impairment, you think you've put your best foot forward. You would think you would say, hey, Judge, you're impairing me from prosecuting my case. You would think that the Lake County State Attorney's Office in a case like this would say, we've put everything in front of you that we possibly know and you have impaired us from going forward. We think you really is in error. And that's what they did. And then they said, uh-oh, we forgot this. And then they mentioned, uh-oh, we didn't put the actual content of the communications in the record. But we want – now we want you to apply the joint criminal enterprise exception. With respect to that, that's your burden, to show that all the elements of privilege applies. That's the defendant's burden. And your point, and I think the state conceded it in their response, so you don't have to offer any evidence, correct? We – what we relied on is the factors of being Trendiac. Right. And that was conceded. There was no question. There's a presumption they were married. There's no indication that it was sent to anybody else or that it was not presumed to be. It wasn't a threat or anything like that like we see in the Trendiac case. So I think that we put enough evidence on to say that it's privilege. The exceptions, if they're going to say an exception applies, especially one that's not on the books, that's not in the statute and no Illinois court has ever recognized, you would think that the burden would be on them to say, but wait a minute, an exception applies. I don't think you can put the burden on the defendant in this case to say not only does the privilege exist, but also here's all the evidence why none of the exceptions apply. I think we put on the language of the Supreme Court in 2010 or 2014 in Trendiac that said there's a presumption. So I don't think it's incumbent on the defense to put on that proof. I think it's incumbent on the state initially, and certainly when you're the appellant, I certainly think it's incumbent upon the appellant to provide the right type of proof and the record for this court to apply. I want to dispute here, first of all, your argument is that the third-party exception doesn't apply because there was no misdelivery, no lack of care by the custodian, and also the joint criminal enterprise has been rejected in this court. So the only issue really from your perspective is whether or not that conversation and the signing of the consent constitutes a waiver, correct? I would say those are all non-issues, and I would say the issue with the consent form is, first of all, whether or not Judge Boris erred in not reopening the proofs. Because even though we know about it because it's in all the pleadings, technically it's not in the record on appeal at the time the appellant filed their brief. So they were never able to reopen the proofs and include that. I've never fully briefed whether or not that consent form constitutes a waiver because the only thing I did was go to the third doubt and doubt factor, which I think you make a good point that it may not even apply, but the third party isn't really important, okay? And we've made that argument why it's not really important, because there's nothing in the record to suggest what those communications are. So the first issue would be, number one, did Judge Boris err in rejecting the state's motion to reopen the proofs? You asked him to do that, he rejected it. I don't think he deferred to this court on that. The only thing he said that was not right, he was talking about the, my understanding at least, was his comments that the issue wasn't right had to do with the fact that the state hadn't figured out it was on her phone. Right, they hadn't searched her phone. Right. We don't even know, was her phone returned? Yes. So the state's case, based upon what was on Joe's phone, and that's what your motion focused on all along, correct? Our focus was always on that. On the motion to reopen the proofs, we said no, it's not appropriate to reopen, and we stand by that. Even if it were reopened, we would take the position that even with that consent form, it doesn't constitute a waiver, because it has to be more specific, and we don't know it's on her phone. You don't believe that it has to be a consent per conversation, do you? Well, I think it's factually, I would say it's factually specific, but I think just giving a phone without even knowing, and I brought this up in my brief, and I wasn't trying to be flippant about it. I mean, these conversations go back years. How do we know she even had the same phone at the time she was trying to give it to somebody? She gave her phone number and her password. It's on the document. Her phone number, okay, so how do we know she doesn't have the same phone number? But the point is that she made that consent in the context of a conversation about Joe's phone, his messages, and hiding money, and then she signed a consent saying you can take anything relevant or related to the investigation from her phone. So maybe she's got a different phone. Maybe what she's trying to do, if she's pretending, I'm going to be a devil's advocate here for a second. If she's trying to look good in front of these investigators, she's not going to say, oh, I don't know. Go ahead, take it. You're going to find this. Knowing all along, maybe in her mind, it might be different. The other question is, by the way. You made a motion to strike a portion of the state's brief because it was not in the record. What's not in the record is not in the record. Like in your comments to the media that you were surprised that the defendant was even arrested because she fully cooperated with the police. Do you recall that? I never made that comment. Well, that was reported. But that's why it's important to stay within the record. So if there's something about what the defendant thought or what the defendant, what she was thinking when she signed a consent form, that's for a hearing on remand if we get to that point. That's not for your hypotheticals here in this courtroom. Stick to the record. Right. The record is she had a conversation with the police. They talked about a message about hiding money, asked for her phone. She signed a consent telling the police they could have her, the FBI, whatever is related to this investigation or relevant. I don't have the form here in front of me. But that was on the document. And I would suggest that that is all true if it's in the record. But I would suggest that that's not enough to show a specific waiver because, number one, we don't even know what's on his phone. There may have been more than one conversation about hiding money. There could have been money. There could have been a conversation about hiding money from a child. She's his wife, and she said you're going to find the same thing on my phone as on Joe's phone. You're probably going to find the same thing on my phone as on his phone. Okay. She said there's no way, there's no ifs, ands, or buts about it. She said it's on video and it's in the report. It's hard one to get. It's going to be hard one to take back at a hearing. Well, but the question is, because when you look at the cases, does that constitute a waiver of what's on his phone when we don't know what's on her phone? What if her phone is clean? It makes a difference. Why the big deal about trying to get her phone? If it's true, from a law enforcement perspective, if it's true that there's a mirror image on her phone that's on his phone, then why did they ask for her phone? What would be a legitimate, and I've thought about this, what's a legitimate law enforcement reason? And maybe the reason they were searching is because they got it and they said, what are we doing this for? We've got his. But they never did. Any other questions? Thank you. Mr. London? Mr. London, let me ask you. I mean, it's part of the reason we went down this path of doubt factors, because we captured a motion to reopen the proofs in trial court. I mean, theoretically, in order to avoid any more of the case issues, you could have dismissed the appeal and gone back to trial court and filed a motion to reconsider, correct?  I'd say that might not have been a better step. We were trying to come up with, as I said, an extraordinary request that we've never done. And that was the method we came up with. It wasn't until, you know, I mean, I wish I had a better answer, but it wasn't until Justice Burkett suggested it does not apply that it hit me like, OK, of course. Yes, sure. I mean, the question is, does this court have enough? And the answer is no. I think all parties could have done differently, if not better. And maybe both are true. But I still want to say, I don't know if you want to call it disingenuous or inaccurate to say that defendant didn't know what the state was offering. Of course she knew. It was at least a small portion. I don't know. I'm not trial counsel. I made sure I didn't look at, because I didn't want to do what Justice Burkett has suggested and start making references outside the record. So I don't know exactly what was turned over and what wasn't. What I do know is the question was asked relating to, you know, information found on Lieutenant Plano. About hiding money. About hiding money. I do know for a fact that there were at least one reference in the motion to reconsider after the motion eliminated, not later on the motion. And that was redacted at a defendant's request. So to say that they didn't know, that's not accurate. They knew. It's a separate question as to whether the consent does or does not equate to waiver. But there was unquestionably a consent. Defendant knew it. Defendant, to the extent that we're arguing that what was on the phone at the time of the communications were made, and let me correct the record or correct counsel, the fact that, well, this is years later. It wasn't years later at the time she consented. It was within a few months of the communications at issue at that time. It's years later now. But it was shortly after, I believe, the communications are referencing. Yeah, I'd rather not get into that. I think it's that the state, because they've listed in their discovery the statements of the defendant recovered from Joel's phone, that they intend to be able to lay a foundation for the admissibility if they can get around. Of course. And if they don't, then it will not be allowed in. Right. And again, why did they, in response to the question, why did they seek the defendant's phone? Well, you always try to, one, follow up. You'd be sloppy if you don't. Two, to the extent that that request was related to after they had lost a motion in Lemonade, saying because of the marital privilege, we're not allowing Joe in, Joe's communications. So they're saying, well, we'd better check or at least attempt to get the defendant's. And as far as the fact, why didn't we exploit it? Why didn't we develop it? Lake never had the phone. As far as I'm aware, the FBI had it. It was returned to defendant. Lake, could Lake have gone in? Should Lake have gone in and asked the judge to order it be turned over or a new consent? Possibly. It simply is not done. I don't know if the FBI ever exploited the phone. I don't know what the transcript might or might not say. I don't think it's irrelevant. Because as this court has suggested, whether or not it is sufficient, the people can and hopefully would present an expert saying at the time of the communication, at the time the marriage was in place, here's what happened. And here's what you would have had, the exact marriage. So we can use Joe's phone, at least under the exceptions. The waiver question is separate. And who, just as I was saying, who is the sloppy one? Who can waive the consent? Is it only the defendant? It's a her phone? Did Lieutenant Glinowitz waive consent to his phone by taking actions that led to an investigation? Well, she holds the privilege. She holds the privilege as against him, but again, this is part of, like I said, we're interweaving joint criminal conspiracy with third-party exception with waiver. So the question obviously is, what is on his phone? Is that sufficient basis to proceed with a prosecution without knowing what's on her phone? And did she waive the right to his phone? I don't think we will ever discover what is on her phone because at this point in time, if she didn't delete it initially before she handed it over, by strong guess, it is gone, destroyed, deleted now. Should a defendant be rewarded for basically destroying evidence? And I think the answer is it shouldn't be, given the specific limits of the privilege and the interest of justice, and that's what we're asking this court to do, is remand it back to the lower court with instructions not just to give us leave to file, but with an order to reopen groups or rehear the case or have an evidentiary hearing. And we can, assuming whatever the religion is, then we can come back up at that time if necessary. Mr. Morris seems to suggest that the, not seems to suggest, that with respect to the conversation with the officer, that that cannot amount to a waiver unless we have some evidence. It has to be more specific. Do you agree with that? No. You think there's enough evidence to decide? I think there's enough evidence because we, again, in certain circumstances, it's a conversation between the only way to discover would be through her testimony. But we have, again, good and bad, we have technology. And the technology is we know what was discussed. That comment and the consent is sufficient. Whether or not, as I said, they'll be successful in saying, you know, only Joe was involved, only my comments were just in support of him, that's a factual issue. But as far as can it be waived without knowing, I strongly suggest we will never know what was on her phone at the time she consented. We do know and certainly can discover what was on her phone at the time the communication was made. That should be sufficient to waive it. Thank you. Thank you, Your Honors. Mr. Morrison, you do have a certain response on file. Is there anything that you want to say that relates just to what we've now heard? Not unless you have any questions. If there are any questions, I'm happy to address them. All right, thank you. I think we do not at this time. All right, gentlemen, thank you very much for your arguments here. We appreciate the time and the effort that you have expended. We are going to take the matter under advisement, take the matter and issue a decision, and hopefully we now stand adjourned for the day subject to file. Thank you.